

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEFFERY DILLEN and HOLLY DILLEN, § | |
| § | |
| *Plaintiffs*, § | |
| v. § | CIVIL ACTION NO. 4:23-cv-2043 |
| § | |
| QBE INSURANCE CORPORATION, § | |
| § | |
| *Defendant*. § | |

## ORDER

Pending before the Court is Defendant QBE Insurance Corporation's ("QBE") Motion for Summary Judgment. (Doc. Nos. 38, 39). Plaintiffs Jeffery Dillen and Holly Dillen filed a response in opposition (Doc. No. 40), and QBE replied. (Doc. No. 42).[1] Considering the motion, briefing, evidence, and applicable law, the Court hereby **GRANTS** QBE's Motion for Summary Judgment. (Doc. No. 38).

### I.  Background

This is a dispute involving extra-contractual claims against a home insurance provider. Defendant QBE issued a home insurance policy to Plaintiffs Jeffery and Holly Dillen that covered Plaintiffs' home at all relevant times (the "Policy"). (Doc. No. 30-5). In February 2021, a winter storm swept across Texas. During this time, Plaintiffs were at a local hospital for the birth of their child. (Doc. No. 20 at 5).[2] When they returned home on February 17, 2021, they discovered substantial damage to their house. (*Id.*). Though Plaintiffs assert that they used reasonable care to maintain heat in the home while they were away, their pipes had frozen and burst. (*Id.*). Plaintiffs reported these damages to QBE that same day. (*Id.*).

---

[1] Though Plaintiffs' response was untimely, and no extension was requested, the Court will consider Plaintiffs' response.
[2] The Court refers to the pleadings, Motion, and response where applicable for background and context.

The property was subsequently inspected on behalf of QBE. (Doc. No. 39-29). Many months later, QBE issued Plaintiffs a check based on their initial inspection for $24,412.97, representing the replacement cost value ("RCV") estimated by the field adjuster minus Plaintiff's deductible ("QBE's Initial Estimate"). (Doc. Nos. 39-12, 40-4).

Unhappy with QBE's Initial Estimate, Plaintiffs submitted to QBE an estimate prepared by Neal Building Group, LLC in August 2021, totaling $62,200.00 (the "Initial Neal Estimate")—clearly exceeding QBE's Initial Estimate. (Doc. No. 39-8). QBE reinspected the property, utilizing a different inspector, on August 19, 2021. QBE prepared a supplemental estimate after the reinspection (the "Supplemental Estimate"). The Supplemental Estimate totaled $81,613.05. (Doc. No. 40-17). Based on this estimate, QBE issued Plaintiffs a check for $38,978.63, representing the new RCV of $81,613.05 minus $15,721.45 in depreciation and the prior $24,412.97 payment. (Doc. No. 39-11).

On February 1, 2022, almost a year after the loss, Plaintiffs submitted a supplemental estimate prepared by Neal Building Group, LLC totaling $207,156.49 (the "Supplemental Neal Estimate"). (Doc. No. 39-13). QBE then retained MKA International, Inc. ("MKA") to inspect the property and prepare another estimate. MKA's estimate totaled $125,301.95 (the "MKA Estimate"). (Doc. No. 39-14). Based on the MKA Estimate, QBE issued Plaintiffs a third check for $34,249.02, representing the new RCV of $125,301.95 minus $22,503.57 in depreciation and the two prior payments. (Doc. Nos. 39-15, 39-35).

On June 23, 2022, Plaintiffs invoked the appraisal clause in the Policy. The provision states:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the

> amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Doc. No. 39-5 at 18). Plaintiffs and QBE then named their respective appraiser, as provided by the provision. The parties' appraisers later signed the "Appraisal Award," which totaled $192,292.69 (an Actual Cash Value ("ACV") of $165,720.03 for building coverage, an ACV of $3,717.81 for "other structures" coverage for the outdoor swimming pool, and an ACV of $22,854.85 for personal property coverage). (Doc. No. 39-19). Based on the Appraisal Award, QBE issued two payments on the same day. The first payment was for $71,639.46, representing the new ACVs of $165,720.03 and $3,717.81 minus the amount previously paid. (Doc. No. 39-21). The second payment was for $22,854.85, the ACV for personal property coverage. (Doc. No. 39-22).

In total, QBE paid Plaintiffs $192,292.69. Significantly, Plaintiffs concede that QBE "has paid the amounts contractually owed." (Doc. No. 39-26 at 4). Nevertheless, Plaintiffs filed suit against QBE in Texas state court. *See* (Doc. No. 1) The case was then removed to this Court. The Court previously granted Plaintiffs leave to file a second amended complaint. (Doc. No. 26). Plaintiffs' Second Amended Complaint alleges that: 1) Defendant conducted an outcome-oriented or unreasonable investigation of Plaintiffs' claim in violation of Tex. Ins. Code § 541.060(a)(7) (Count Two); 2) Defendant failed to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim although Defendant's liability was reasonably clear in violation of Tex. Ins. Code § 541.060(a)(2) (Count Three); 3) Defendant failed to affirm or deny coverage within a reasonable time in violation of Tex. Ins. Code § 541.060(a)(4)(A) (Count Four); 4) Defendant failed to promptly provide a reasonable explanation of the basis in law or fact for denying Plaintiffs' claim in violation of Tex. Ins. Code § 541.060(a)(3) (Count Five); and 5) Defendant breached its

common-law duty of good faith (Count One). *See* (Doc. No. 20). Defendants subsequently filed a motion to dismiss. (Doc. No. 27). The Court had not yet ruled on Defendant's motion to dismiss before QBE filed its Motion for Summary Judgment. (Doc. No. 38). QBE now seeks summary judgment on each of Plaintiffs' claims. (Doc. No. 38 at 8).

## II.  Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III.  Analysis

As an initial note, Plaintiffs claim that:

> QBE does not argue as a basis for summary judgment that there is no evidence of the statutory torts alleged in Counts Two, Three, and Four of Plaintiffs' Second Amended Complaint or that there is no evidence that Defendant breached the common law duty of good faith as alleged . . . . Plaintiffs therefore object to summary judgment on the basis that there is no evidence of any of the Chapter 541 violations or breach of the common law duty of good faith alleged in Plaintiffs' Second Amended Complaint because QBE's summary judgment motion does not provide Plaintiffs adequate notice to support entry of summary judgment on that basis.

(Doc. No. 40 at 2). On the contrary, Defendant explicitly states in its "Issues Presented" section of its Motion, "Plaintiffs' Chapter 541 and bad faith claims fail because Plaintiff has not alleged and has no evidence of an injury independent of delay or denial of policy benefits," and further states, "Plaintiffs have no evidence that any alleged violation of Chapter 541 was committed knowingly." (Doc. No. 38 at 8). The Court finds that these statements provide Plaintiffs with adequate notice that Defendant seeks summary judgment on the basis that there is no evidence of any of the Chapter 541 or breach of common law duty of good faith allegations.

### a.  The Texas Insurance Code Claims

Plaintiffs allege violations of the Texas Insurance Code based on QBE's conduct after Plaintiff filed her claim. *See* (Doc. No. 20). In a diversity case such as this, the Court must apply Texas law and is bound by the interpretation of that law put forth by Texas courts. The Supreme Court of Texas instructs that the Insurance Code serves to "supplement[] the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (citing TEX. INS. CODE § 541.060(a)). Section 541 generally prohibits insurers from engaging in a variety of "unfair settlement practices." TEX. INS. CODE § 541.060(a). As noted above, Plaintiffs specifically allege that QBE violated § 541.060(a)

5

in several ways: 1) Defendant conducted an outcome-oriented or unreasonable investigation of Plaintiffs' claim; 2) Defendant failed to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim although Defendant's liability was reasonably clear; 3) Defendant failed to affirm or deny coverage within a reasonable time; and 4) Defendant failed to promptly provide a reasonable explanation of the basis in law or fact for denying Plaintiffs' claim. *See* (Doc. No. 20). Plaintiffs further allege that QBE breached its common-law duty of good faith.

For an insured Plaintiff "to recover damages for an insurer's violations of the Texas Insurance Code, the insured must prove either (1) a right to receive benefits under the policy; or (2) compliance with the independent-injury rule." *St. Luke's United Methodist Church v. Church Mut. Ins. Co.*, No. 2:20-cv-00053, 2022 WL 980352, at *7 (S.D. Tex. Mar. 31, 2022). Thus, QBE owes no duty to pay once it pays out what plaintiff is contractually entitled under the policy, unless Plaintiffs qualify under one of the two exceptions to that general rule—the benefits-lost and independent-injury rules.

### i. The Benefits-Lost Rule

As noted above, the general rule in Texas is that an insurance company has no obligation to pay damages that exceed what it contractually owes under the policy once its contractual obligation has been paid. The first exception relevant is the Benefits-Lost Rule, which allows an insured plaintiff to recover benefits as actual damages "even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right." *Menchaca*, 545 S.W.3d at 497. This principle typically applies in the context of claims "alleging that an insurer misrepresented a policy's coverage, waived its right to deny coverage or is estopped from doing so, or committed a violation that caused the insured to lose a contractual right to benefits that it otherwise would have had." *Id.*

Here, Plaintiffs did not lose a contractual right to benefits under their policy. Though Plaintiffs state that the benefits-lost rule applies because "their claim [was] covered and QBE's tort resulted in the improper withholding of payment of their covered claim," Plaintiffs do not allege that they lost contractual rights due to the actions of QBE. In fact, Plaintiffs concede that QBE "has paid the amounts contractually owed." (Doc. No. 39-26 at 4). The Fifth Circuit has already expounded that, except under the later-discussed independent-injury rule, a plaintiff is not entitled to recover under an extra-contractual theory "because they have already received all the benefits they were entitled to under their policy."[3] *Navarra v. State Farm Lloyds*, No. 23-20582, 2024 WL 3174505, at *3 (5th Cir. June 25, 2024). Plaintiffs acknowledge that they have already received all the benefits they were entitled to under their policy. Thus, the Benefits-Lost rule is inapplicable here and Plaintiffs' extra-contractual claims must be dismissed if Plaintiffs' cannot show they suffered some independent injury.

    *ii.*    *The Independent-Injury Rule*

The second exception is when the statutory violation causes an independent injury. *Menchaca*, 545 S.W.3d at 500. "An insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500.

Here, though they argue otherwise, Plaintiffs do not bring statutory claims to recover the policy benefits they are entitled to because they acknowledge that all policy benefits have been paid. Instead, they seek damages in addition to the policy benefits for expenses that they allege were caused by QBE's violation of the Texas Insurance Code. The Fifth Circuit has clarified the

---

[3] In fact, Plaintiffs are well aware of this decision by the Fifth Circuit in *Navarra* as Plaintiffs' counsel in the case at bar was counsel for the plaintiffs in *Navarra*. Plaintiffs' counsel seems to be filing case after case to try to find a court that will bite at its unfounded arguments that go against precedent. This Court will not.

7

Independent-Injury Rule "limits the recovery of *other* damages that "flow" or "stem" from a mere denial of policy benefits." *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435 452 (5th Cir. 2018) (citing *Menchaca*, 545 S.W.3d at 500) ("We have further limited the natural range of injury by insisting that an injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right."). Applying *Lyda*, the Fifth Circuit reiterated that in cases where a Plaintiff seeks damages based on *paid* policy benefits, the independent injury rule applies. *Navarra*, 2024 WL 3174505, at *2.

Plaintiffs seek damages based on paid policy benefits. Thus, the Independent-Injury Rule applies. Still, believing that they can rely on the benefits-lost theory rule, Plaintiffs do not suggest how they were injured independent from their right to receive policy benefits—let alone provide any evidence. Plaintiffs proffered evidence that QBE issued payments weeks after an inspection occurred. *See* (Doc. Nos. 39-12, 40-4). Plaintiffs also provide evidence that their emails often went unresponded to, at least until QBE had made a decision regarding their claim. *See* (Doc. No. 40-30). Plaintiffs state that they were injured, including claims of mental anguish, because QBE improperly withheld payment of the claim. Nevertheless, Plaintiffs have not provided any evidence of damages that do not "flow" or "stem" from the denial of policy benefits.

True, Plaintiffs seek the extra-contractual costs with a claim based on what seems to be a statutory violation. But the alleged costs directly stem from QBE's alleged failure to timely pay the benefits that were owed. Once the benefits were paid, Texas law holds that the cause of action could no longer survive without a separate and independent injury. While the *claim* may be independent from any contractual dispute, the *injury* is not. *See In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 874 (Tex. 2021).

8

Even the Supreme Court of Texas seemingly recognized the narrow window imposed by the Independent-Injury Rule, stating that "although we reiterate . . . that such a claim could exist, we have no occasion to speculate what would constitute a recoverable independent injury." *Menchaca*, 545 S.W.3d at 500. The Court held that such a successful claim would be "rare, and [the Supreme Court of Texas] in fact had yet to encounter one." *Id.* at 499. As such, an injury stemming from the dilatory but eventual payment of all policy benefits is not an injury *independent* from the underlying policy claim.[4] As Plaintiffs' statutory claims fail to establish their right to additional benefits under the Benefits-Lost or Independent-Injury rules, the Court **GRANTS** summary judgment for QBE on Plaintiffs' Texas Insurance Code claims.

### b. Claim for Breach of the Common Law Duty of Good Faith and Fair Dealing

Plaintiffs claim that Defendant breached its common law duty of good faith and fair dealing. An insurer breaches its duty of good faith and fair dealing when "the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997). The key inquiry is the reasonableness of the insurer's conduct. *Id.* at 49. If after a reasonable investigation, the insurer has evidence showing that an insured's claim may be invalid, then a bad faith action is not viable. *Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461, 465 (S.D. Tex. 1997).

Plaintiffs have not offered any evidence that QBE acted either in bad faith or unreasonably in the coverage of their claim. Instead, Plaintiffs' submissions are "evidence showing only a bona

---

[4] The Court recognizes that this framework arguably allows insurance companies to commit all sorts of statutory violations without consequences, so long as the policy benefits are paid in full *eventually*. This does not seem entirely fair to the insured. Moreover, it seems to undermine the purpose of the Insurance Code because, if insurance companies can violate the Texas Insurance Code without accountability, it renders the protections given to the insured illusory. Nevertheless, this Court is bound by how the Supreme Court of Texas and Fifth Circuit have defined this doctrine; if it were not, the Court might not reach the same result.

9

fide coverage dispute," which "does not, standing along, demonstrate bad faith." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). The evidence shows a claim, an inspection process yielding multiple, large payments, an appraisal process, and an additional payment through that process. (Doc. Nos. 39-11, 39-13, 39-14, 39-21, 39-22, 40-4, and 40-17). Plaintiffs fail to present any facts of a wrong, insult, abuse or gross negligence that rise to a claim of an independent tort.

Plaintiffs only attempt to provide evidence that Defendant acted in bad faith is QBE's log that details the investigation of Plaintiffs' claim. (Doc. No. 40-29). Plaintiffs state that QBE acted in bad faith when it summarily denied coverage to rewire Plaintiffs' home without conducting an independent investigation. (Doc. No. 40 at 10). Yet, the document Plaintiffs' cite does not reflect that QBE summarily denied coverage. Instead, the log details the adjuster's hesitation with the request to rewire Plaintiff's house, stating, in its entirety:

> called veteran electric and they do not have anyone that I can talk to about this report. I have to send an email to an inbox that will be reviewed and someone will reach back out to me. this is not enough evidence in terms of actual code, actual damage caused by the loss, or related to the claim itself and repairs for me to agree to at this time. I need more info that is specific to the Houston code the argument on electrical has been about.

(Doc. No. 40-29 at 12). This entry does not suggest that the claim was denied, only that the investigator needed additional information before approving the claim. Moreover, the next entry ( dated just two weeks later) approves the claim to rewire the house. That entry discloses that there was "much debate and back and forth," but that the parties had reached an agreement. Thus, the evidence provided by Plaintiff contradicts their contention that QBE summarily denied their claim in violation of its duty of good faith and fair dealing.

Additionally, the QBE claims log details repeated attempts to contact Jeffery Dillen to no avail. *See, e.g.* (Doc. No. 40-29 at 21) (For example, three log entries include: 1) from 1/14/22,

10

"called the insured twice today to discuss the claim and the supplement and all related issues. I left a voicemail the 1st time at 11am this morning and just called again with no answer;" 2) from 1/20/22, "called and left another message for the insured to call and discuss the supplement request;" and 3) from 1/31/22, "Called Jeff the insured and his voicemail is full and not allowing messages at this time"). This alone suggests that QBE had a reasonable basis for delay—that QBE could not even contact the insured to discuss the claim, let alone resolve it.

Plaintiffs have failed to meet their burden to raise a genuine issue of material fact as to whether Defendant acted in bad faith, thereby breaching its common law duty of good faith and fair dealing. The evidence shows only a "bona fide coverage dispute," which "does not, standing alone, demonstrate bad faith." *State Farm Lloyds*, 951 S.W.2d at 448. Thus, the Court **GRANTS** summary judgment for QBE on Plaintiffs' claim for breach of the common law duty of good faith and fair dealing..

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** QBE's Motion for Summary Judgment. (Doc. No. 38). All other pending motions are therefore moot. (Doc. No. 27).

Signed at Houston, Texas, on this the 11th day of February, 2025.

Andrew S. Hanen
United States District Judge